**TICKET CENTER, INC.,
et al., Plaintiffs,**

v.

**BANCO POPULAR DE PUERTO
RICO, et al., Defendants.**

**Civil No. 04–2062(JAG).**

United States District Court,
D. Puerto Rico.

July 18, 2006.

Guillermo De–Guzman–Vendrell, Jose A. Ocasio–Robles, De Guzman & Gierbolini Law Office, San Juan, PR, Santiago F. Lampon–Gonzalez, Lampon & Associates, Guynabo, PR, for Plaintiffs.

Herman G. Colberg–Guerra, Leilani Torres–Roca, Nestor Mendez–Gomez, Ma-ria D. Bertolez–Elvira, Pietrantoni Mendez & Alvarez, San Juan, PR, for Defendants.

### OPINION AND ORDER

GELPI, United States Magistrate Judge.

This matter is before the court on defendants' supplemental motion to dismiss pursuant to the Parker Doctrine. The action was commenced by plaintiffs, Ticket Center, Inc. and Ticket Plaza, Inc. d/b/a Ticket Center (collectively hereinafter "Ticket Center") against Banco Popular de Puerto Rico d/b/a Ticketpop and Popular, Inc. (collectively hereinafter "Banco Popular") for alleged antitrust violations. After review of the pertinent law, the court **DENIES** defendants' motion to dismiss (Docket No.71).

### I. Relevant Procedural and Factual Background

The instant action was filed by Ticket Center against Banco Popular for alleged antitrust violations pursuant to the Clayton Act, 15 U.S.C. § 18, the Sherman Act, 15 U.S.C. §§ 1, 2, the Bank Holding Company Act, 12 U.S.C. § 1972, *et seq.*, and supplemental state laws. *See* Docket No. 1, ¶¶ 2–4. Ticket Center claims that during 1995 it developed an innovative business idea that would expedite and make more accessible to the general public the sale, distribution and purchase of tickets for sports, cinema and entertainment events (also known as the Tickets Product Market or "TPM"). *Id.* at ¶ 15. Ticket Center's idea involved the use of emerging internet technology to facilitate ticket sales in Puerto Rico (the geographical market). *Id.* at ¶¶ 16–17.

Ticket Center alleges that in early 1995, it approached Banco Popular with the idea of entering into a joint venture, thus combining ticket sales with Banco Popular's ATH/ATM[1] network. *Id.* at ¶ 18. Ticket

---

1. ATH ("A Toda Hora") is the Spanish acronym for ATM ("Automatic Teller Machine").

Center claims that Banco Popular was the leading participant in the Electronic Transactions Market ("ETM") at the time. *Id.* According to Ticket Center, from 1995 to 2002, it shared confidential information with Banco Popular in furtherance of the joint venture. *Id.* at ¶ 19. In 2002, notwithstanding Banco Popular's alleged interest in pursing the business venture, Banco Popular created "Ticketpop" and effectively sidestepped Ticket Center in the TPM. *Id.* at ¶ 21. Ticket Center alleges that by 2002, Banco Popular had become a dominant sponsor and advertiser for major entertainment and sporting events in Puerto Rico (the Sponsorship Product Market or "SPM"), and began using its dominance to commit a series of antitrust violations including conditioning its services and products to coerce clients to refrain from using competitor services. *Id.* at ¶¶ 22, 27.

In 2000, the Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority (hereinafter "AFICA" for its Spanish acronym) executed an agreement with SMG Puerto Rico, L.P. ("SMG") for the pre-opening consulting and management of the Coliseo Juan Miguel Agrelot (hereinafter "the Coliseo"). *See* Docket No. 71, Exh. 1. In October 2003, SMG published a notice to bidders requesting a qualified ticketing service company to provide a computerized ticketing system and its services to support the ticketing requirements of the Coliseo. *Id.,* Exh. 2. Banco Popular was awarded the contract and exclusive rights to ticket sales for all Coliseo events.[2] *See* Docket No. 1, ¶ 36. The granting of these exclusive rights are the subject of the present motion to dismiss.

Banco Popular filed the present motion under seal due to an attachment to the motion which contains a confidentiality agreement. *See* Docket Nos. 70, 71. Ticket Center duly opposed the motion and the parties were granted leave to file a reply and sur-reply respectively. *See* Docket Nos. 94, 97, 98. After the court's initial denial of the motion, Banco Popular requested reconsideration. *See* Docket Nos. 82, 85. The same was granted. *See* Docket No. 88.

## II. Legal Analysis

### A. The Parker "State Action" Doctrine

In 1943, the Supreme Court determined, in *Parker v. Brown,* that Congress had not intended for federal antitrust laws to apply to trade restraints or monopolies imposed by state governments. 317 U.S. 341, 350–51, 63 S.Ct. 307, 87 L.Ed. 315 (1943). Although the antitrust laws aim at competitive markets, the *Parker* Court recognized that governments often restrict competition for public purposes. The actions of state governments were deemed not to fall within the constraints of antitrust laws.

Courts have extended the immunity to municipalities, as well as, private parties and state agencies regulating the conduct of private parties. *See Southern Motor Carriers Rate Conference, Inc. v. United States,* 471 U.S. 48, 105 S.Ct. 1721, 1726, 85 L.Ed.2d 36 (1985); *Tri–State Rubbish, Inc. v. Waste Management,* 998 F.2d 1073, 1076–77 (1st Cir.1993); *Massachusetts Furniture & Piano Movers v. Federal Trade Commission,* 773 F.2d 391, 394 (1st Cir.1985). The Supreme Court has set forth a two-pronged test for determining whether anticompetitive conduct engaged

---

**2.** Ticket Center, as an unsuccessful bidder, challenged in the Puerto Rico court system, the granting of said contract and the procedure through which it was carried out. Ticket Center lost the challenge and subsequent appeals. *See* Court of Appeals No. KLRA 2004–0243; Supreme Court No. CC 2005–1010.

in by private parties should be deemed state action and thus shielded from federal antitrust laws. First, the challenged restraint must be one that is clearly articulated and affirmatively expressed as state policy. *California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980); *Arroyo–Melecio v. Puerto Rican Insurance Company*, 398 F.3d 56, 71 (1st Cir.2005). Second, the State must actively supervise any private anticompetitive conduct. *Id.* Only if these two prongs are satisfied, may Parker immunity apply to private parties.

Finally, given that state action immunity is in the nature of an affirmative defense, the party claiming the immunity has the burden of proof. *Puerto Rico Ports Authority v. Compañía Panameña de Aviación*, 77 F.Supp.2d 227, 232 (1999) (citing *F.T.C. v. Ticor Title Insurance, Co.*, 504 U.S. 621, 112 S.Ct. 2169, 119 L.Ed.2d 410 (1992)).

### B. Banco Popular's Immunity

Title 12, § 1254, *et seq.*, of the Puerto Rico code sets forth the creation of AFICA, its duties and responsibilities. AFICA is a "corporate and politic body constitut[ing] a public corporation and instrumentality of the Commonwealth of Puerto Rico." *See* P.R. Laws Ann. tit. 12, § 1254. AFICA was created to strengthen commerce, promote economic development, improve public safety, health, education and general welfare. *Id.* at § 1258. Among the powers vested by the legislature, AFICA was empowered to "make and execute financing and lease agreements and other instruments necessary or convenient for the exercising of the power and functions conferred [onto them]." *Id.* at § 1255(f). Further, AFICA has the power to "exercise the powers vested in it and to perform any act or activity necessary, convenient, or desirable to carry out its purpose." *Id.* at § 1255(r). As an instrumentality of the Commonwealth of Puerto Rico, AFICA, and by association SMG and Banco Popular, is subject to the *Midcal* test.

### 1. Clearly Articulated State Policy

■ The first prong of the *Midcal* test is satisfied when the legislative policy is "forthrightly stated and clear in its purpose to permit activities that would otherwise run afoul of the Sherman Act." *Compañía Panameña*, 77 F.Supp.2d at 233 (citing *Midcal*, 445 U.S. at 105, 100 S.Ct. 937). In order to determine if this type of state policy exists, a review of Puerto Rico state law is necessary. It should be noted, however, that in order to satisfy this first prong of the *Midcal* test, state compulsion of private anticompetitive conduct is not required. *Southern Motor Carriers*, 105 S.Ct. at 1728.

Under AFICA's broad directive, Banco Popular argues that the entity had the right to contract with SMG and to extend exclusive ticketing sale rights for the Coliseo. Banco Popular, thus, suggests that the aforementioned sections, alone, are sufficient to show that there existed a clearly articulated policy. Banco Popular links the broad language in the AFICA Act to overall well-being of Puerto Rico citizens in having access to major sporting and entertainment events. Further, Banco Popular argues that the promotion of economic development suffices this prong. This rationale, while quite clever, falls short. Under the well-settled tenets of the *Parker* doctrine, the state policy must be clearly articulated and affirmatively expressed. It is a far stretch to conclude that general language on economic development and broad executory functions are sufficient to fall into the "cleary articulated" category. Nonetheless, assuming *arguendo*, the court analyzes the second prong in turn.

**358**

### 2. *Active State Supervision*

■ The active supervision prong of the *Midcal* test requires that state officials have and exercise power to review particular anticompetitive acts of private parties and disapprove those that fail to accord with state policy. Absent such a program of supervision, there is no realistic assurance that a private party's anticompetitive conduct promotes state policy, rather than merely the party's individual interests. *F.T.C. v. Ticor Title Ins. Co.*, 504 U.S. at 634, 112 S.Ct. 2169.

■ Banco Popular argues that AFICA maintains ultimate control and actively supervises Ticketpop because it requires that Ticketpop submit weekly reports on ticket sales. A review of the relationship between Banco Popular and AFICA, however, evidences that this is not so. First, the reports are submitted to SMG, not directly to AFICA and while SMG acts as agent to AFICA, there is no guarantee that the reports are being monitored for anticompetitive conduct by the state. *See* Docket No. 71, Exh. 4, § 12. Notwithstanding this point, the reports required of Ticketpop under the licensed user agreement do not reflect an attempt to regulate anticompetitive conduct. Instead, the reports are recounts of weekly ticket sales, including a calculation of royalty payments generated from sales. *Id.* at §§ 4, 12. Furthermore, nowhere in the agreement is there anything that may suggest that the state is, or is concerned with, actively supervising Banco Popular's activities. The mere presence of some state involvement or monitoring does not suffice. *See 324 Liquor Corp. v. Duffy*, 479 U.S. 335, 345 n. 7, 107 S.Ct. 720, 93 L.Ed.2d 667 (1987). Therefore, given that Banco Popular has not met the *Midcal* two-pronged test, state action immunity does not attach.

### III. Conclusion

For the aforementioned reasons, the court **DENIES** Banco Popular's motion to dismiss (Docket No. 71).

**SO ORDERED.**